**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**STEVEN CANNADY,**

                      **Plaintiff,**

            **v.**                                    **5:19-CV-714**
                                                        **(FJS/TWD)**

**BOARD OF TRUSTEES OF THE BOILERMAKER-**
**BLACKSMITH NATIONAL PENSION TRUST and**
**BOILERMAKER-BLACKSMITH NATIONAL**
**PENSION TRUST,**

                      **Defendants.**
_____

**APPEARANCES**                                      **OF COUNSEL**

**CLARK LAW GROUP, PLLC**             **DENISE M. CLARK, ESQ.**
1100 Connecticut Avenue, NW
Suite 920
Washington, D.C. 20036
Attorneys for Plaintiff

**BLAKE & UHLIG, P.A.**                     **NATHAN A. KAKAZU, ESQ.**
753 State Avenue
Suite 475
Kansas City, Kansas 66101
Attorneys for Defendants

**TUCKER ARENSBERG, P.C.**             **JORDAN S. BLASK, ESQ.**
1500 One PPG Place
Pittsburgh, Pennsylvania 15222
Attorneys for Defendants

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Pending before the Court are Defendants' motion for summary judgment, *see* Dkt. No. 23, and Plaintiff's cross-motion for summary judgment, *see* Dkt. No. 29, brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**II. BACKGROUND**

Steven Cannady ("Plaintiff") brought this claim against the Board of Trustees of the Boilermaker-Blacksmith National Pension Trust ("Defendant Trustees") and the Boilermaker-Blacksmith National Pension Trust (the "Pension Trust") (collectively referred to as "Defendants") alleging that they failed to properly administer his pension plan consistent with the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* Dkt. No. 1, Compl., at 1.

Plaintiff contends that the Pension Trust, and Defendant Trustees who administer it, are simultaneously responsible for evaluating a Pension Trust participant's eligibility for disability benefits and calculating the appropriate amount of benefits. *See* Dkt. No. 29-1, Pl's Stmt. of Facts, at ¶ 3. They are also responsible for paying those benefits once a decision is made. *See id.* Plaintiff claims that he began participating in the Pension Trust in or around 1993; and he became fully vested in the fund in 2002. *See id.* at ¶ 15.

Plaintiff asserts that the following events led to his filing the pending lawsuit. He claims that, on April 3, 2017, he received a memorandum notice, dated "May 2017," regarding a significant reduction in future benefit accrual that would take effect on October 1, 2017, after Defendants enacted "Amendment 4." *See id.* at ¶ 16. A month later, on May 16, 2017, Plaintiff received a pension application packet containing the application timeline, instructions, qualified

joint and survivor annuity notice, relative value and right to defer notice, and his benefit payment election estimate. *See id.* at ¶ 19. The next day, May 17, 2017, Plaintiff spoke with an individual on the Pension Trust's staff to confirm that the deadline by which he would have to apply for his disability pension was September 1, 2017. *See id.* at ¶ 20. At that time, Plaintiff claims that Defendants advised him that they would honor his September 1, 2017 Annuity Starting Date ("ASD") so long as he received his disability determination from the Social Security Administration ("SSA") prior to that date. *See id.* at ¶ 21.

On July 31, 2017, the SSA issued Plaintiff an award of benefits, reflecting that he was determined disabled on May 25, 2017, and that his entitlement to payment would commence beginning in November of 2017. *See id.* at ¶ 22. That same day, Defendants sent Plaintiff a new pension application packet. *See id.* at ¶ 23. In the cover letter of that packet, the Plan Administrator allegedly indicated to Plaintiff that he "should complete, sign, date and mail" the pension application packet "to the Pension Trust with a postmark date by August 14, 2017, to establish a September 1, 2017 [ASD]." *See id.*

On August 3, 2017, Defendants sent Plaintiff another letter stating that the July 31st letter had contained "incorrect information," and that a participant will be evaluated under the pension plan's provisions in effect prior to October 1, 2017, only if a participant is entitled to Social Security Disability Income before September 1, 2017, and establishes an ASD before that date. *See id.* at ¶ 24. Five days later, on August 8, 2017, Plaintiff alleges that he timely filed his disability retirement package, which reflected his ASD as September 1, 2017. *See id.* at ¶ 25. Plaintiff contends that, in his application, he elected to receive his disability pension under the "50% Husband and Wife Pension" option, which would result in a monthly payment of $7,600.85. *See id.* at ¶ 26.

On August 15, 2017, Defendants sent Plaintiff a letter stating that, based upon his application filing date and the pension plan's provisions, his ASD was November 1, 2017. *See id.* at ¶ 27. On November 8, 2017, Defendants approved Plaintiff's disability pension application; but, in calculating the amount of his pension, they only approved a monthly payment of $3,029.83. *See id.* at ¶ 28. This is because Defendants allegedly calculated Plaintiff's pension based on provisions in Amendment 4, which, as noted above, went into effect on October 1, 2017. *See id.* at ¶¶ 12-14, 17, 28.

Plaintiff appealed Defendants' denial of his requested ASD of September 1st; and, despite being untimely, Defendants considered his appeal. *See id.* at ¶¶ 29-31. Defendants denied Plaintiff's claim, stating that his date of entitlement to Social Security benefits was November 1, 2017. *See id.* at ¶ 32. Following that denial, Plaintiff filed his complaint in the instant action on June 17, 2019, alleging (1) wrongful denial of benefits in violation of ERISA, brought pursuant to 29 U.S.C. § 1132(a)(1)(B), and (2) breach of fiduciary duty in violation of 29 U.S.C. §§ 1104(a)(1)(D) and 1109(a), brought pursuant to 29 U.S.C. § 1132(a)(3). *See* Dkt. No. 1 at ¶¶ 39-57.

### III. DISCUSSION

**A. Legal standard**

"ERISA is silent as to the standard of review to be applied to administrators' benefit determinations." *Glockson v. First Unum. Life Ins. Co.*, No. 7:04-CV-838, 2006 WL 1877140, *4 (N.D.N.Y. July 6, 2006) (Hurd, J.) (citing *Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 145 (2d Cir. 2003)). "The Supreme Court, however, has held that challenges to denials of benefits are 'to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary authority to determine eligibility for benefits or to

construe the terms of the plan.'"[1]  *Id.* (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  Here, the Boilermaker-Blacksmith Pension Plan Document ("the Plan") explicitly assigns authority to Defendant Trustees to determine eligibility for benefits and to interpret the terms and provisions of the Plan.  *See* Dkt. No. 23-2, Ex. 1, Pension Plan, at §§ 8.03, 10.01(j).[2]

"'Where a written plan confers upon an administrator the discretionary authority to determine eligibility, a court must view its decisions with a "strong measure of deference" and may reverse only if the administrator's ultimate conclusions are "arbitrary and capricious."'"  *Id.*

---

[1] Although Plaintiff does not allege that he was denied benefits entirely, he contends that he was denied his full benefits as calculated under the pre-Amendment 4 pension plan.  *See generally* Dkt. No. 1.  Thus, the Court finds that this standard is appropriate in this case.

[2] Specifically, the Plan states as follows:

> Benefits under this Plan will be paid only if the Trustees and their designees decide, in their discretion, that the applicant is entitled to benefits.  The Trustees and their designees shall be the sole judges of the standard of proof required for any application for benefits and shall have full discretion to make findings of fact, interpret the terms of the Plan, and decide all questions arising under the Plan. Decisions of the Trustees and their designees shall be final and binding on all parties.

*See* Dkt. No. 23-2, Ex. 1, at § 8.03.

> The Trustees shall have complete discretion to construe, interpret, and apply all terms and provisions of this Plan document and the Trust Agreement in resolving any dispute in accordance with these rules, including the discretion to determine the standard of proof required.  The Trustees' findings and their determination of any dispute shall be final and binding upon all parties to the dispute.  No action may be brought for benefits provided by this Plan document or any amendment or modification, or to enforce any right granted under the Plan, until after the claim has been submitted to and determined by the Trustees.  The decision of the Trustees shall receive judicial deference unless the Trustees have abused the discretion granted to them under the Plan document and Trust Agreement …

*Id.* at § 10.01(j).

(quoting *Armstrong v. Liberty Mut. Life. Assur. Co.*, 273 F. Supp. 2d 395, 402 (S.D.N.Y. 2003) (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995))).  "The administrator's decision is reviewed to determine whether it 'was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'"  *Id.* (quoting *Armstrong*, 273 F. Supp. 2d at 403 (citing *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir. 1995))).  Finally, "[a] decision or interpretation is arbitrary and capricious if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'"  *Id.* (quoting *Pagan*, 52 F.3d at 442).

Therefore, because the Plan confers Defendant Trustees with the explicit authority to interpret its terms, determine which applicants are eligible for pension benefits, and decide all questions arising under it, the Court finds that an "arbitrary and capricious" standard of review applies; and, additionally, it must give Defendants' decisions "a strong measure of deference."

**B.  Plaintiff's entitlement to benefits under the plain language of the Plan**

According to Plaintiff, the primary issue in this case is whether Defendants wrongfully interpreted the language in the Plan when they found that he was entitled to benefits under the language in Amendment 4.  *See generally* Dkt. No. 29, Pl's Memorandum of Law, at 12-16.  Specifically, Plaintiff argues that Defendants should have found that he was entitled to the benefits provided in the Plan *prior* to Amendment 4's Effective Date, October 1, 2017, because he met all of the eligibility requirements in Section 4.09 of the Plan and applied for benefits on August 8, 2017.[3]  *See id.* at 6, 13-14.  The parties agree that Amendment 4 went into effect on October 1, 2017.  *See id.*; *see also* Dkt. No. 23-6, Defs' Memorandum in Support, at 8-9.

---

[3] Section 4.09 lists the requirements for a participant to qualify for disability pension benefits under the Plan.  *See* Dkt. No. 23-2, Ex. 2, at 34-35.

- 6 -

However, Defendants dispute Plaintiff's assertion that, because he was eligible and applied for benefits before Amendment 4's effective date, that he is entitled to pre-Amendment 4 benefits. *See generally* Dkt. No. 23-6, at 7-9.  Contrary to Plaintiff's belief, Defendants contend that Section 4.09 simply establishes *how* a participant qualifies for a disability pension.  *See* Dkt. No. 30, Defs' Reply & Opposition, at 4.  Defendants have never disputed that Plaintiff is entitled to a disability pension; in fact, they awarded him such a pension.  *See id.*[4]

Instead, Defendants contend that the central issue for this case is *when* the pension became effective.  *See id.*  According to Defendants, the "effective date" that determines what rules apply to Plaintiff's disability pension is the same as his ASD.  *See id.* (citing Dkt. No. 23-2, Ex. 1, at 188 (Amendment 4 at ¶ 15)).  In the Plan, the ASD is described as follows:

**Section 1.01. Annuity Starting Date.**

(a) **Generally.** The Annuity Starting Date is the first date for which benefits first become payable and shall be the first day of the first calendar month starting after the applicant has fulfilled all of the conditions for entitlement to benefits, including the submission of a completed application for benefits, unless it is deferred by the applicant's election.  Notwithstanding the foregoing,

(1) The establishment of an Annuity Starting Date under this Plan shall also be subject to the other requirements set forth in this Section 1.01, and to the spousal consent requirements set forth in Article VI of the Plan; and

(2) Effective October 1, 2006, the Annuity Starting Date established with respect to an application that is filed (or postmarked) on or after the fifteenth day of the month shall in no event be earlier than the first day of the second calendar month following the month in which the application was filed or postmarked.

…

(d) **Other Limitations on Establishing the Annuity Starting Date.** The Annuity Starting Date shall not be later than the Participant's Required Beginning Date as defined in Section 8.05(b). The Annuity Starting Date for a Disability Pension shall not be earlier than the first day of the sixth month of disability.

---

[4] Accordingly, the Court notes that there is no genuine dispute that Plaintiff is eligible and entitled to disability benefits.

*See* Dkt. No. 23-2, Ex. 1, at 9-10.

Defendants calculated Plaintiff's ASD as November 1, 2017; and Plaintiff "assumes" its truth. *See* Dkt. No. 23-6 at 8; *see also* Dkt. No. 29 at 15. The facts in the record support this finding as well. SSA determined that Plaintiff became disabled on May 25, 2017. *See* Dkt. No. 23-3, Ex. 2, at 45 ("Notice of Award"). According to the Plan, an ASD cannot be earlier than the first day of the sixth month of disability. *See* Dkt. No. 23-2, Ex. 1, at 9-10 (§ 1.01). Plaintiff's sixth month of disability would begin on November 25, 2017; and, thus, his ASD is November 1, 2017.

The Court finds that the only true point of contention is whether Plaintiff's benefits calculation should be based on the date that he applied and was eligible for pension benefits—as Plaintiff suggests—or on his ASD—as Defendants argue. To determine whether Amendment 4's provisions apply to Plaintiff, the Court must look at the plain language of the Plan. "Interpretation of the terms of an ERISA pension plan is governed by the 'federal common law of rights and obligations under ERISA-regulated plans.'" *Aramony v. United Way of Am.*, 254 F.3d 403, 411 (2d Cir. 2001) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989) (internal quotation marks omitted)) (other citations omitted). "In applying these principles, we interpret and enforce 'unambiguous language in an ERISA plan' according to its 'plain meaning.'" *Id.* at 412 (quoting *Aramony* [*v. United Way Replacement Benefit Plan*,] 191 F.3d [140,] 149 [(2d Cir. 1999)] ("*Aramony II*")). "'"Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement."'" *Id.* (quoting [*Aramony II*, 191 F.3d at 149] (quoting *O'Neil v. Retirement Plan for Salaried Employees of RKO Gen., Inc.*, 37 F.3d 55, 59 (2d Cir. 1994))). "In making a

determination of ambiguity, 'reference may not be had to matters external to the entire integrated agreement.'"  *Id.* (quoting [*Aramony II*, 191 F.3d at 149]).

Section 4.10 in both the pre- and post-Amendment 4 Plan describes how a participant's disability benefits are calculated.  Under the pre-Amendment 4 Plan, Section 4.10 provided, "[t]he monthly Disability Pension shall be equal to the Basic Pension and Regular or Special Past Service Pension, if any, the Participant would receive if he were age 65 at the time he became totally and permanently disabled."  *See* Dkt. No. 23-2, Ex. 1, at 35.  Under that version of the Plan, the Basic Pension was calculated using a participant's ASD.  *See id.* at 36 (§ 4.03).  The Regular or Past Service Pensions were calculated using a participant's Past Service Credits and an Average Contributing Factor.  *See id.* at 28 (§ 4.05).  After Amendment 4 was enacted, Section 4.10 was amended to provide the following:

> **Section 4.10.  Amount of the Monthly Disability Pension**, is deleted in its entirety and the following language substituted therefor:
>
> For Disability Pensions with an Annuity Starting Date prior to October 1, 2017 and for pensions for Grandfathered Actives with an Annuity Starting Date on or after October 1, 2017, the monthly Disability Pension shall be equal to the Basic Pension and Regular or Special Past Service Pension, if any, the Participant would receive if he were age 65 at the time he became totally and permanently disabled.
>
> For Disability Pensions for Participants other than Grandfathered Actives with an Annuity Starting Date on or after October 1, 2017, the monthly Disability Pension shall be calculated in accordance with the following rules.  If the Participant has met the service requirements of an Early Retirement Pension, the Disability Pension shall be calculated in the same manner as the Early Retirement Pension. If the Participant has not met the service requirements of an Early Retirement Pension, the Disability Pension shall be equal to the Basic Pension and Regular or Special Past Service Pension, if any, the Participant would receive if he were age 65 at the time he became totally and permanently disabled, reduced by ½ of 1% for each month by which the Participant is younger than age 65 but not younger than 55 on the Annuity Starting Date of his Disability Pension.

*See id.* at 118.

Upon reviewing these provisions, it is clear that, under either version of the Plan, pensions are calculated based on the ASD, never on the date that Plaintiff applies or claims that he is eligible for benefits. Had Defendants intended for benefits to be calculated pursuant to a participant's date of eligibility, they could have used the words "Entitlement Date" instead of "Annuity Starting Date" in Sections 4.03 and 4.10 of the Plan. In Section 1.16, the Plan defines an "Entitlement Date" as "[t]he first month for which the Participant is eligible to receive Social Security Disability Benefit or Railroad Retirement Disability Benefit, regardless of the date payment is made." *See id.* at 14. In fact, a court from the Eastern District of Pennsylvania came to a similar conclusion in a case involving the same Plan and Defendants. *See Yahawi v. Boilermaker-Blacksmith Nat'l Pension Trust*, CIVIL ACTION NO. 19-1952, 2020 WL 4365602, *6 (E.D. Pa. July 29, 2020). In *Yahawi*, the court noted that the Entitlement Date "does not control the benefits starting date by the plain language of the Plan—the Annuity Starting Date controls." *Id.* (footnote omitted).[5]

Here, Defendants found that Plaintiff's pension became effective on November 1, 2017, because that is the first date that the benefits became payable, *i.e.*, his ASD, which entitled him to benefits under Amendment 4. *See* Dkt. No. 23-3, Ex. 2, at 5 (Appeal Denial). Looking at the plain language of the Plan both pre- and post-Amendment 4, it is clear that the ASD is used to calculate Plaintiff's benefits. Thus, the Court finds that Defendants acted reasonably in relying on the ASD to determine the benefits calculation. Further, because Plaintiff's ASD was after

---

[5] In a footnote, the *Yahawi* court noted, "[t]he Annuity Starting Date does not control the benefits starting date for individuals that meet the grandfather provision, but it is undisputed that Yahawi does not meet the requirements for the grandfather provision." *Yahawi*, 2020 WL 4365602, at *6 n.14. The same is true here; the parties do not dispute that Plaintiff does not meet the requirements for the grandfather provision; and, thus, the Court finds that the ASD controls Plaintiff's benefits starting date.

Amendment 4 became effective on October 1, 2017, the Court concludes that Defendants acted reasonably in finding that Amendment 4 applies.[6] Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's first cause of action because they did not act arbitrarily or capriciously in interpreting the unambiguous language of the Plan.

### C. Plaintiff's cause of action for breach of fiduciary duties

Plaintiff brought his second cause of action against Defendants for breach of fiduciary duties pursuant to ERISA's civil remedy provision, 29 U.S.C. § 1132(a)(3), also referred to as § 502(a)(3). *See* Dkt. No. 1 at ¶ 48. That provision of ERISA permits a civil action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]" 29 U.S.C. § 1132(a)(3). The Supreme Court has held that "[t]his structure

---

[6] The Court additionally notes that Plaintiff was aware of Defendants' reasonable interpretation *before* he submitted his application for benefits. *See* Dkt. No. 23-3, Ex. 2, at 33 (Aug. 3, 2017 Letter). In a letter dated August 3, 2017, Defendants informed Plaintiff of the following:

> If you establish an Annuity Starting Date of September 1, 2017 AND your date of entitlement to Social Security Disability is prior to September 1, 2017, then your pension will be processed in accordance with the rules of the Pension Plan prior to October 1, 2017.
>
> If you establish an Annuity Starting Date of September 1, 2017 AND your date of entitlement to Social Security Disability is on or after October 1, 2017, your benefits will be processed in accordance with the rules of the Pension Plan changed October 1, 2017.

*Id.* at 33.

After receiving this letter, combined with his SSA Notice of Award indicating that he was entitled to benefits as of November of 2017, it was unreasonable for Plaintiff to believe that his benefits should be calculated using the pre-Amendment 4 Plan.

suggests that these 'catchall' provisions act as a safety net, offering appropriate equitable relief for injuries caused by violations that [ERISA] does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).

Furthermore, in cases such as this one, courts have consistently held that, to the extent a plaintiff seeks to "invoke ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), that section may not be relied on by a claimant to pursue relief – in this case, pension benefits – available under a separate ERISA provision." *Whelehan v. Bank of Am. Pension Plan for Legacy Companies-Fleet-Traditional Benefit*, 621 F. App'x 70, 72 (2d Cir. 2015) (summary order) (citing *Varity Corp.*[, 516 U.S. at 515] ("[W]here Congress elsewhere provided adequate relief for a beneficiary's injury … relief [under § 502(a)(3)] normally would not be 'appropriate.'")); *see also Babino v. Gesualdi*, 278 F. Supp. 3d 562, 579-81 (E.D.N.Y. 2017) (collecting cases to support its finding that the plaintiff's claim pursuant to ERISA § 502(a)(3) is duplicative of his claim brought pursuant to 29 U.S.C. § 1132(a)(1)(B)).

In his complaint, Plaintiff seeks (1) an order establishing his ASD as September 1, 2017, (2) retroactive payment of benefits that he did not receive because Defendants applied Amendment 4, (3) continued disability pension benefits per the terms of the Plan, (4) prejudgment interest, (5) an order determining that Defendants breached their fiduciary duties, (6) "appropriate equitable relief under 29 U.S.C. § 1132(a)(3)," and (7) reasonable attorneys' fees and costs. *See* Dkt. No. 1 at 10 (Prayer for Relief). As Defendants point out, Plaintiff's ideal relief is the "proper" calculation and payment of his pension benefits in accordance with the pre-Amendment 4 version of the Plan. *See* Dkt. No. 23-6 at 10. That relief is available under a separate ERISA provision, 29 U.S.C. § 1132(a)(1)(B), pursuant to which Plaintiff brought his first cause of action. Therefore, the Court finds that Plaintiff's second cause of

action, insofar as he seeks payment under the pre-Amendment 4 version of the Plan, is duplicative; and, as such, the Court grants Defendants' motion for summary judgment with respect to this claim.[7]

## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment, *see* Dkt. No. 23, is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's cross-motion for summary judgment, *see* Dkt. No. 29, is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated:  August 17, 2020
          Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

---

[7] Additionally, as Defendants point out in their Reply, Plaintiff did not allege in his complaint that Amendment 4 violated ERISA's anti-cutback provisions or that Defendants' notice to Plan participants about Amendment 4 was lacking; but Plaintiff made each of these arguments in his memorandum of law.  *See* Dkt. No. 29 at 9-11, 16-19.  Courts in this Circuit have held that they will not consider new claims asserted for the first time at summary judgment that were not raised in the complaint.  *See Butts v. N.Y. City Dep't of Hous. Preservation & Dev.*, No. 00-CV-6307 (KMK), 2007 WL 259937, *15 n.23 (S.D.N.Y. Jan. 29, 2007); *Kearney v. Cnty. of Rockland*, 373 F. Supp. 2d 434, 441 (S.D.N.Y. 2005).  Accordingly, the Court disregards these claims.